**Frank G. KIRTZ and Mary Jane Kirtz, Plaintiffs-Appellants,**

**v.**

**Sidney GROSSMAN, John J. Theiss, Paul Weil, Frederick Busse, Diatemp, Incorporated, a Corporation, Essex International, Incorporated, a Corporation, Defendants-Respondents.**

**No. 33785.**

St. Louis Court of Appeals, Missouri.

Jan. 26, 1971.

Frank Mashak, St. Louis, for plaintiffs-appellants.

Alvin A. Wolff, St. Louis, Kirkland, Ellis, Hodson, Chaffetz & Masters, by Walter T. Kuhlmey, Chicago, Ill., for defendants-respondents.

Heneghan, Roberts & Godfrey, by Carl R. Gaertner, St. Louis, for defendants-respondents, Sidney Grossman, John J. Theiss, Paul Seil, Frederick Busse & Diatemp, Inc.

CLEMONS, Commissioner.

The ultimate issue here is whether a majority stockholder can dissolve a corporation by paying a minority stockholder the book value of his stock when the fair value of corporate assets exceeds the book value.

This suit attacks the planned dissolution of defendant Diatemp, Incorporated, a Missouri corporation. Plaintiffs Frank G. and Mary Jane Kirtz owned 2.28 per cent of Diatemp stock and defendant Essex International, Incorporated, (Essex) owned 97.72 per cent. The four individual defendants are officers and directors of Diatemp. Essex had recently acquired its Diatemp stock from 19 stockholders at $14 a share and then voted all its stock in favor of a plan for dissolution and liquidation of Dia-

temp. (§§ 351.465 and 351.470 [1]). By that plan plaintiffs would be paid only the $5.44 book value of their shares.

Plaintiffs' petition relies on §§ 351.485 and 351.490 which empower a court of equity to appoint a liquidating receiver for a corporation when "the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent." We look first to plaintiffs' allegation that Diatemp's efforts to dissolve were illegal.

■ Plaintiffs' first contention concerns the distinction between procedures for corporate dissolution (§§ 351.465 and 351.470) and corporate merger or consolidation (§§ 351.410 to 351.450). The procedures for corporate dissolution and corporate merger or consolidation do differ, and Essex followed the procedure for dissolution. Plaintiffs base their contention of illegal dissolution on Essex's pleaded admission that it intends to continue in business with the same employees and at the same location Diatemp had used. Plaintiffs contend this in effect is a consolidation and that Diatemp may not purport to dissolve when in fact it is consolidating with Essex. Plaintiffs cite In re Doe Run Lead Co., 283 Mo. 646, 223 S.W. 600 [6], where the supreme court voided a purported dissolution that resulted in joining assets and operations of two *mining* corporations. But that conclusion was reached in view of a statute (§ 3362 RSMo 1909) which restricted the right of consolidation to *manufacturing* corporations. The supreme court suggested (l. c. 612) that this legislative restriction did not "meet the needs of modern business." The legislature responded by repealing the restriction, (§ 9759, Laws of 1921, p. 266) so *Doe Run* no longer controls. The fact that Essex intends to use Diatemp's assets and personnel at the same location does not deprive Diatemp of its statutory right to dissolve under §§ 341.465 and 341.470.

■ Plaintiffs also attack the legality of Diatemp's dissolution plan on the ground

it was adopted at a stockholders' meeting held August 11, 1968 without having given plaintiffs ten days' notice. (§ 351.230, subd. 1). Plaintiffs admit that on August 4, seven days before the August 11 meeting, they received a copy of the notice. It had been sent by registered mail, properly addressed, stamped and mailed July 29, 1969. This was sufficient notice under § 351.230, subd. 2, declaring that a notice so mailed shall be deemed delivered when mailed. We rule this point of illegality against plaintiffs.

■ Although not mentioned as a Point Relied On, and thus not preserved for review (Civil Rule 83.05(a) (3), V.A.M.R.; Sandler v. Schmidt, Mo., 263 S.W.2d 35 [1]), plaintiffs argue insufficient notice because the record fails to show compliance with § 351.230, subd. 3, requiring publication of notice of a stockholders' meeting. The original copy of that notice was in the corporate minute book; attached to it were both its secretary's and the publisher's affidavits of publication of the notice. The entire minute book was marked as defendants' exhibit 4 and had been in the hands of counsel, witnesses and the judge throughout the trial. Plaintiffs' contention that there was no evidence of the publication of notice is specious, and even if valid could not constitute manifest injustice under Civil Rule 79.04, V.A.M.R.

We deny plaintiffs' contentions of illegality and pass on to the ultimate issue: plaintiffs' contention that the dissolution plan was oppressive in that it allowed them less than their fair share of Diatemp's assets.

This issue requires us to relate the parties' actions leading to Diatemp's plan of dissolution. Diatemp, a manufacturer of component parts for electrical appliances, had issued 110,522 shares of common stock, owned by 20 stockholders. Plaintiffs owned 2520 shares and since incorporation plaintiff Frank Kirtz (hereafter referred to in the singular as plaintiff) had been a direc-

1. All section numbers unless otherwise indicated refer to RSMo 1969, V.A.M.S.

**544**

tor and the corporation's secretary and attorney.

For several years before mid-1969 Diatemp had prospered, its sales, profits and net worth steadily increasing. But this expansion steadily outgrew Diatemp's liquid assets; shortage of working capital was a persistent problem. By then Diatemp had borrowed up to $500,000 and could not raise the money it needed to acquire raw materials and pay current liabilities. The directors finally decided it would be best to sell out to a larger corporation; their efforts produced two prospects. Plaintiff and defendant John Theiss, Diatemp's president, first met with representatives of International Telephone and Telegraph Company (IT&T), who offered to pay Diatemp's stockholders the equivalent of $9 a share for their stock. Plaintiff and Theiss got IT&T to enlarge its offer so as to give each of them personally an additional $50,-000 in IT&T stock and employment contracts to pay each of them a total of $50,-000 in salaries over several years. Plaintiff and Kirtz "accepted" IT&T's offer but Diatemp's directors rejected it. Nonetheless, the directors continued to negotiate for a higher price, which IT&T raised in stages, finally to $14 a share.

Diatemp's directors meanwhile had been bargaining for the sale of its stock to defendant Essex. Essex declined plaintiff's proposal for a personal bonus of $50,000 in Essex stock and a $50,000 employment contract. But Essex did offer to pay $12 a share for 51 per cent or more of Diatemp's stock, or $14 a share for 100 per cent of it.

On June 25, 1969 Diatemp's directors, including plaintiff, voted unanimously to recommend to its stockholders that they sell their stock to Essex. Meanwhile, Essex had withdrawn its 100 per cent requirement and within a week had bought all of the Diatemp stock, except that of plaintiffs, at $14 a share.

On July 17, 1969 Diatemp's directors, excepting plaintiff, duly met and voted to call a stockholders' meeting to consider voluntary dissolution in accordance with § 351.465. A "Plan of Complete Liquidation and Dissolution" was proposed by the board, subject to stockholder approval. As said, due notice was given for a stockholders' meeting to be held August 11. By then Essex and plaintiffs were Diatemp's only stockholders.

On that date plaintiffs did not appear, but Essex voted all its stock in favor of the liquidation plan. In effecting dissolution under § 351.470, subd. 3(2), a corporation must "distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests." By the approved plan Diatemp's assets were to be distributed to its stockholders in kind, except that those owning less than 10 per cent (the plaintiffs) were to receive their share in cash, the amount to be based on the book value of Diatemp's assets. The last audit of Diatemp's books showed that as of June 30, 1969 the book value of its stock was $5.44 a share. At trial each of Diatemp's directors testified the price of $14 per share paid by Essex was fair and adequate.

█ In the same sense that equity considers corporate directors as actual if not technical trustees for the shareholders, Merrill v. Davis, 359 Mo. 1191, 225 S.W.2d 763 [4], majority stockholders are considered trustees for the minority. Pepper v. Litton, 308 U.S. 295, l. c. 306, 60 S.Ct. 238, 84 L.Ed. 281 [7]. In Flarsheim v. Twenty Five Thirty Two Broadway Corporation, Mo., 432 S.W.2d 245 [6], the supreme court declared that statutes dealing with the sale of all a corporation's assets are designed primarily for the protection of dissenting shareholders. That would be equally true of § 351.470 dealing with the transfer of corporate assets in kind.

█ The evidence here was that both IT&T and Essex were willing to pay $14 a share for a majority of Diatemp stock, and four Diatemp officers testified that $14 per share was fair and adequate. This

was substantial evidence that plaintiffs' share of Diatemp's assets exceeded the $5.44 per share they would get in cash under the liquidation plan adopted by Essex to effect Diatemp's dissolution. We hold Essex misapplied Diatemp's assets to its own benefit and to plaintiffs' detriment; thus, as to plaintiffs, the plan was oppressive and entitled them to equitable relief.

■ The defendants contend plaintiff is barred from equitable relief by the clean hands doctrine because of his efforts to get the stock and salary bonus from IT&T and by trying to persuade Diatemp to take IT&T's offer. Defendants misconceive the limits of the clean hands doctrine. It does not repel all sinners from a court of equity. Application of the doctrine is limited to conduct relating directly to the subject matter in litigation. St. Louis County v. Litzinger, Mo., 372 S.W.2d 880 [4] and McClure v. Wilson, 238 Mo.App. 824, 185 S.W.2d 878 [8, 9]. Plaintiff's misconduct (and that of Diatemp's president, defendant Theiss) concerned IT&T's initial efforts to buy Diatemp stock. The misconduct ended when Diatemp rejected the IT&T offer; it is unrelated to the Essex plan to dissolve Diatemp and does not bar plaintiffs from equitable relief.

■ This brings us to the question of disposition. Where the acts of majority stockholders are oppressive, as we find them to be here, § 351.485 provides that a court of equity "shall have full power to liquidate the assets and business of a corporation." Note that judicial liquidation is permissive; we are not restricted to that remedy. When equity acquires jurisdiction of a cause it will retain it to do full and complete justice, and may give relief different from that sought by the plaintiff. Hallauer v. Lackey, 353 Mo. 1244, 188 S.W.2d 30 [7]; Anison v. Rice, Mo., 282 S.W.2d 497 [4–6].

■ Receivership and a sale of Diatemp's assets would, of course, determine the plaintiffs' proportionate share thereof. But such drastic action may be unnecessary.

If the record here permitted us to determine the fair value of Diatemp's assets we would order Essex to pay plaintiffs the amount of their proportionate share in money, and upon Essex's failure to do so we could then decree Diatemp's dissolution by a liquidating receiver. We believe that kind of alternate relief is what plaintiffs are entitled to. The record here is insufficient to determine the fair value of Diatemp's assets on the day prior to adoption of the plan of dissolution, August 10, 1969. (See Flarsheim v. Twenty Five Thirty Two Broadway Corporation, Mo., 432 S.W.2d 245 [13, 14].) That value will have to be determined on rehearing in the trial court.

■ Another point raised by plaintiffs, apart from the merits, must be disposed of. In certifying the transcript in this case the official court reporter, Thomas T. Gore, charged 75 cents for each original page and 25 cents for each copy page, a total of $307.50. Plaintiffs paid that amount, an overcharge of $123 since the lawful fee is 45 cents per original page and 15 cents per copy page. (§ 485.100). Exacting excessive fees by a public officer is illegal. (§ 558.140). The trial court is directed to retax the costs by reducing the court reporter's fee by $123 and ordering the reporter, as an officer of the Circuit Court of the City of St. Louis, to repay that sum to plaintiffs. Compare Osborne v. Goodman, Mo., 289 S.W.2d 68 [4].

The decree is reversed and the cause is remanded to the trial court to conduct a hearing to determine the fair value of the assets of Diatemp, Incorporated, and to proceed further in the cause in accordance with the views herein expressed.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the decree is reversed and the cause is remanded to the trial court to conduct a hearing to determine the fair value

of the assets of Diatemp, Incorporated, and to proceed further in the cause in accordance with the views therein expressed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.