Esther FIX, Plaintiff-Appellant,

v.

FIX MATERIAL COMPANY, INC., a corporation, Defendant-Respondent.

No. 36648.

Missouri Court of Appeals,
St. Louis District,
Division One.

June 8, 1976.

Donald S. Hilleary, Clayton, for plaintiff-appellant.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Carroll J. Donohue, Harry B. Wilson, St. Louis, for defendant-respondent.

RENDLEN, Judge.

Esther Fix, a minority shareholder, sued under § 351.485, RSMo.1969,[1] to compel liquidation of a closely-held corporation for alleged illegal and oppressive conduct by those controlling the corporation. At the close of plaintiff's case, the trial court granted defendant's motion to dismiss under Rule 67.02 and from the order dismissing her petition with prejudice, plaintiff appeals.

A suit to compel liquidation under the Missouri Statute is an equitable action, *Handlan v. Handlan,* 360 Mo. 1150, 232 S.W.2d 944, 946[2] (1950); *Kirtz v. Grossman,* 463 S.W.2d 541, 545[7] (Mo.App.1971); and in such actions a motion to dismiss at the close of plaintiff's case constitutes a submission of the case by defendant as it stands when the motion is offered, 30A C.J.S. Equity § 579 at 643. The trial court is to weigh the evidence, resolve conflicts and on that basis rule the motion. *Rigg v. Hart,* 255 S.W.2d 778, 779[3] (Mo.1953).[2] On appeal we review the record anew on the facts and applicable law, giving due deference to the trial court's superior opportunity to judge the credibility of witnesses. Rule 73.01(3). We are, however, to affirm the decree of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc, 1976). Further, we consider evidence properly admissible and exclude from consideration evidence improperly admitted. *South Side Plumbing Co. v. Tigges,* 525 S.W.2d 583, 589[14] (Mo.App.1975).

A defense witness, G. L. Alberici, was offered during plaintiff's case to which plaintiff made no objection and nothing in the record reflects why the witness was called out of turn. The trial court did not consider the Alberici testimony when ruling the motion to dismiss and plaintiff complains because the cross-examination developed testimony favorable to her case. Ordinarily, over proper objection, no part of defendant's evidence would be presented

1. Pertinent portions of § 351.485 are as follows:

"1. Courts of equity shall have full power to liquidate the assets and business of a corporation:

(1) Upon the suit of a shareholder when it is made to appear: . . .

(b) That the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent; or

(c) That the corporate assets are being misapplied or wasted. . . ."

2. Some ambiguity appears as to the standard employed by the trial court in passing on defendant's motion to dismiss. While it is indicated that the court weighed the evidence and found the decisive issues against plaintiff, there are also indications the court treated the motion as one for directed verdict. Though plaintiff discusses the point in her argument portion of her brief, she cannot claim prejudice if the court used the more liberal standard in her favor. Further, the point is not properly raised for review.

during plaintiff's case and if so admitted, would not be considered in ruling the motion. However, no objection appearing, the court in this case should have considered testimony of Alberici since a motion to dismiss submits the case for final determination as it stands when the motion is offered. We find no prejudice by the court's action and consider this testimony in our review.

Contending for reversal, plaintiff argues there was substantial evidence of oppressive and illegal conduct by those in control of defendant Fix Material Company, Inc., within the meaning of § 351.485, RSMo. 1969. More particularly, that the corporation failed to fulfill its purpose of operating at a profit for shareholders; that the persons in control of the corporation acted oppressively by concealing financial information from plaintiff, by failing to attend the special shareholders' meetings called by plaintiff, by voting themselves twenty-year employment contracts as officers, and by engaging in price fixing contrary to § 416.-040, RSMo.1969. Plaintiff's allegations focus on corporate operations from 1963 through 1972.

Defendant is a closely-held Missouri corporation engaged in the business of production, sale and delivery of ready-mix concrete, building and construction supplies. The company's annual audits and financial statements show a marginally profitable enterprise in a highly competitive industry. The major shareholders at the time of incorporation (sometime prior to 1963) were Ralph T. Fix and his brother Joseph E. Fix, plaintiff's deceased husband. Apparently, Joseph held his shares jointly with plaintiff. Other shares issued and outstanding were owned by Rosalia Fix, Donald Fix, Mary Fix, Dorothy Wieck, Sylvester W. Wieck, F. Joseph Weidinger and Virginia Marie Weidinger.

In 1963 the officers were Ralph T. Fix, his son Donald Fix, F. Joseph Weidinger and Joseph E. Fix. Though the company's investment in land and equipment was small, 1963 was a successful year with an operation's profit of $34,619 and a net profit of $33,142. The investment in land and equipment was nearly doubled in 1964 with the purchase of a second concrete plant, new trucks, machinery and equipment. Construction of the plant was financed by a ten-year monthly amortized loan secured by first deeds of trust on the new facility and the existing plant. In conjunction with this expansion, the shareholders, including plaintiff, signed a buy-sale agreement as to corporate stock, which among other things, prohibited payment of cash dividends during the ten-year term of the loan. About this time shareholders Dorothy and Sylvester Wieck executed a ten-year irrevocable voting proxy in favor of Thomas J. McGarry, attorney for the corporation; the same year three officers, Ralph T. Fix, Donald Fix and F. Joseph Weidinger, with shareholder approval, received twenty-year employment contracts with the company. Although he was then a salaried officer, plaintiff's husband, for reasons not appearing, received no employment contract. The interim financial statements for 1964 showed an operating profit of $30,280 and a net profit of $33,972.

Operating profits were down in 1965 to $6,615, though with income from other sources the company realized a net profit of $12,183. There was evidence the decrease stemmed primarily from costs incurred in the expansion effort and slow conditions in the construction industry. Plaintiff's husband, Joseph E. Fix, died in 1965. After his death, Ralph T. Fix, Donald Fix and F. Joseph Weidinger continued as officers. Donald assumed the duties previously performed by Joseph.

The company sustained an operating loss in 1966 of $13,361 reduced by income from other sources to $6,636. Nineteen sixty-seven showed a smaller operating loss of $5,786. Again, outside income softened the effect so the company showed a small net profit of $910.

Plaintiff succeeded to her husband's position on the corporate board in 1966 and the board was increased by one member sometime in 1966 or 1967 to provide an additional director friendly to plaintiff's interests. From then until trial, the board consisted of

(1) Ralph Fix, (2) plaintiff, (3) someone friendly to plaintiff's interests, (4) Thomas J. McGarry, and either (5) Donald Fix or F. Joseph Weidinger who alternated at the discretion of Ralph.

In 1968 the company increased its sales showing a profit on operations of $11,258 and net profits of $18,679. However, a serious loss occurred in 1969 with an operating loss of $27,050 and a net loss of $17,191. The annual report and financial statement showed gross sales down significantly and a decline in both current ratio and net worth. Signs of internal dissension among the shareholders regarding management control of the corporation surfaced that year. Plaintiff and the Wiecks were dissatisfied with the manner in which the three controlling officers were operating the corporation and personal conflicts developed between the Wiecks and Thomas J. McGarry, voting trustee under the trust agreement. There is evidence that the company's officers considered various answers to the internal dissension problem, including purchase of all shares held by plaintiff and the Wiecks, the sale of the business as a going operation and liquidation. No solution was reached.

Notwithstanding the losses and internal conflicts, the employment contracts of Donald Fix and F. Joseph Weidinger were modified to provide cost of living salary increases and bonus arrangements based on a stated percentage of annual net profits.

Fix Material Company, Inc., suffered a second serious loss on operations in 1970 in the amount of $29,465. The loss was due primarily to a labor strike against the company's suppliers, which initially reduced operations and finally caused a three-week shutdown during the peak-production period. Sales fell well below levels of prior years. Cushioning these losses, management, with the agreement of the participating banks, decided to sell all nonessential assets to meet working capital requirements. On authorization from the shareholders, some assets were sold and the company was able to show a net profit of $11,800 that year.

Nineteen seventy-one was a profitable year with operating profits of $13,687. Gross sales were up significantly and additional income from the sale of nonessential assets pushed net profits to $33,955. Dissension among the shareholders increased in 1971 when the officers were paid a bonus on the net-profit figure leading to a derivative action, not at issue on this appeal, challenging the bonus payment. In addition, plaintiff and her representative, Carl R. Moehlenhoff, specifically dissented from a board of director's decision to lease additional trucks on the ground that plaintiff was receiving no return on her investment in the corporation.

The company experienced a disastrous loss in 1972 of $115,076 resulting from a long labor strike, inclement weather and a general depressed condition in the construction industry. In addition, the company lost sales from an abortive attempt to raise prices in conformance with an alleged clandestine price-fixing agreement which management mistakenly regarded as industry wide.

During the ten-year period under discussion, no cash dividends were declared by the corporation. While plaintiff's husband Joseph E. Fix was alive and an active officer of the corporation, he received his salary but following his death, plaintiff received no return or benefit from her investment in any form. She did not actively participate in the operation of the corporation at any time beyond her role as a director. The record does not disclose the payment of any director's fees.

This action, instituted in July of 1972, proceeded to trial in November, 1973. At the time of trial, there were 21,208 shares of common stock issued and outstanding of which plaintiff held 41% or 8,610 shares and Ralph T. Fix 48% or 10,180 shares. Donald Fix, Sylvester Wieck and Dorothy Wieck were among those holding small numbers of shares.

Section 351.485(1), RSMo.1969, of our Business Corporation Act was taken haec verba from the Illinois Business Corporation Act, S.H.A. Ch. 32, § 157.86 (1933), *as*

amended, S.H.A. Ch. 32, § 157.86 (Supp. 1971), which in turn was the statutory basis for the ABA–ALI Model Business Corporation Act. *Flarsheim v. Twenty-Five Thirty-Two Broadway Corporation,* 432 S.W.2d 245, 252[7] (Mo.1968). Prior to the enactment of this provision our courts lacked the authority under their general equity powers to dissolve a corporation and distribute its assets, *Handlan v. Handlan,* 360 Mo. 1150, 232 S.W.2d 944, 950[3] (1950); *Ashton v. Penfield,* 233 Mo. 391, 135 S.W. 938, 948[9] (1911). Now, however, judicial liquidation is permitted. *Jesser v. Mayfair Hotel, Inc.,* 316 S.W.2d 465, 473[9] (Mo.1958). The statute contemplates that the court of equity shall take jurisdiction of the cause, once the requisite showing is made, and bring its discretion to bear in granting or refusing equitable relief. *Handlan v. Handlan,* 360 Mo. 1150, 232 S.W.2d 944[3, 4] (1950); *Kirtz v. Grossman,* 463 S.W.2d 541, 547[7] (Mo. App.1971).

 The complaining shareholder has the burden of proof to establish the requisite jurisdictional facts and the equitable grounds for dissolution. See *Baker v. Commercial Body Builders, Inc.,* 264 Or. 614, 507 P.2d 387 (1973) for a similar interpretation of a nearly identical statute. The court is not limited to the remedy of dissolution but may consider other appropriate alternative equitable relief. *Handlan, supra* at 952; *Kirtz, supra* at 547.[3]

 Plaintiff seeks liquidation of defendant-corporation for alleged oppressive and illegal conduct by those in control. Considering the meaning of the statutory term "oppressive," we note conduct need

---

**3.** The courts in Missouri and other jurisdictions with similar dissolution provisions have recognized a number of equitable remedies depending on the facts of the case and the nature of the problem involved. Among those are:

(a) Entry of an order requiring dissolution of the corporation at a specified future date, to become effective only in the event that the stockholders fail to resolve their differences prior to that date, *Handlan v. Handlan,* 360 Mo. 1150, 232 S.W.2d 944, 951[4] (1950);

(b) Appointment of a receiver, not for the purposes of dissolution, but to continue the operation of the corporation for the benefit of all the stockholders, both majority and minority, until differences are resolved or "oppressive" conduct ceases, *Handlan v. Handlan,* 360 Mo. 1150, 232 S.W.2d 944, 952[5] (1950);

(c) Appointment of a "special fiscal agent" to report to the court relating to the continued operation of the corporation, as a protection to its minority stockholders, and the retention of jurisdiction of the case by the court for that purpose, *Roach v. Margulies,* 42 N.J.Super. 243, 126 A.2d 45, 46[2] (1956);

(d) Retention of jurisdiction of the case by the court for the protection of the minority stockholders without appointment of a receiver or "special fiscal agent," *Patton v. Nicholas,* 154 Tex. 385, 279 S.W.2d 848, 857[6] (1955);

(e) Ordering of an accounting by the majority in control of the corporation for funds alleged to have been misappropriated, Hornstein, *A Remedy for Corporate Abuse,* 40 Col.L.Rev. 220, at 236 (1940);

(f) Issuance of an injunction to prohibit continuing acts of "oppressive" conduct and which may include the reduction of salaries or bonus payments found to be unjustified or excessive, see Hornstein, *A Remedy for Corporate Abuse,* 40 Col.L.Rev. 220, at 236 (1940);

(g) Ordering of affirmative relief by the required declaration of a dividend or a reduction and distribution of capital, *Patton v. Nicholas,* 154 Tex. 385, 279 S.W.2d 848, 857[6] (1955); see *Kirtz v. Grossman,* 463 S.W.2d 541, 545[8] (Mo.App.1971);

(h) Ordering of affirmative relief by the entry of an order requiring the corporation or a majority of its stockholders to purchase the stock of the minority stockholders at a price to be determined according to a specified formula or at a price determined by the court to be a fair and reasonable price, see *Kirtz v. Grossman,* 463 S.W.2d 541, 545[8] (Mo.App. 1971);

(i) Ordering of affirmative relief by the entry of an order permitting minority stockholders to purchase additional stock under conditions specified by the court, *Browning v. C. & C. Plywood Corp.,* 248 Or. 574, 434 P.2d 339, 343[3] (1967);

(j) Award of damages to minority stockholders as compensation for any injury suffered by them as the result of "oppressive" conduct by the majority in control of the corporation, *Browning v. C. & C. Plywood Corp.,* 248 Or. 574, 434 P.2d 339, 343[3] (1967); see *Campbell v. Ford Industries, Inc.,* 266 Or. 479, 513 P.2d 1153, 1156 (Banc 1973).

See *Baker v. Commercial Body Builders, Inc.,* 264 Or. 614, 507 P.2d 387 (Or.1973) and the cases cited therein; cf. *White v. Perkins,* 213 Va. 129, 189 S.E.2d 315 (1972).

not be illegal or fraudulent to be oppressive. The Illinois courts have made it clear, when construing the Illinois Statute (the model for § 351.485), that "oppression" is, in and of itself, an independent ground for relief not requiring a showing of fraud, illegality, mismanagement, wasting of assets, nor deadlock, though these factors are frequently present. *Gidwitz v. Lanzit Corrugated Box Co.,* 20 Ill.2d 208, 170 N.E.2d 131, 135[1] (1960); *Central Standard Life Insurance Co. v. Davis,* 10 Ill.2d 566, 141 N.E.2d 45, 50[3] (1957); *Compton v. Harding Realty Co.,* 6 Ill.App.3d 488, 285 N.E.2d 574, 581[11] (1972). We are persuaded this interpretation is appropriate here.

It has often been stated that oppression suggests "burdensome, harsh and wrongful conduct," "a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members," [4] or "a visible departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely." [5] See *White v. Perkins,* 213 Va. 129, 189 S.E.2d 315 (1972) in which the court adopted the foregoing definition from the cited decisions. Such definitions are suggested perimeters of the broad term rather than narrow definitions which would tend to rob the term of its useful flexibility. As we read the statute, it is intended the courts will proceed on a case-by-case basis. A helpful approach is that taken by the court in *Kirtz v. Grossman,* 463 S.W.2d 541 (Mo. App.1971) in which alleged "oppressive" conduct by those in control of a closely-held corporation was analyzed in terms of the "fiduciary duties" owed by majority shareholders to the minority.

In the instant case Ralph T. Fix, Donald Fix, F. Joseph Weidinger and Thomas J. McGarry, acting in concert, control a majority of the outstanding stock, though no single shareholder owns 51%. Because this control carries the power to destroy or impair the interests of minority owners, the law imposes equitable limitations on the rights of dominant shareholders to act in their own self-interest. Shareholders in control are under a fiduciary duty to refrain from using their control to obtain a profit for themselves at the injury or expense of the minority, or to produce corporate action of any type that is designed to operate unfairly to the minority. *Kirtz v. Grossman, supra* at 544[4]; see *Long v. Norwood Hills Corporation,* 380 S.W.2d 451, 476 (Mo.App.1964). Though controlling shareholders are not fiduciaries in the strict sense, the general concepts of fiduciary law are useful in measuring conduct by those in control that entitles the minority to relief, particularly in the context of a closely-held corporation. We do not mean that a single act in breach of such duty would be sufficient "oppressive" conduct to authorize dissolution of a corporation (unless extremely serious), absent evidence of irreparable injury, imminent danger of loss or miscarriage of justice. *Jesser v. Mayfair Hotel,* 316 S.W.2d 465, 473[9] (Mo.1958). We do not foreclose the possibility that the "cumulative effects . . . of many acts and incidents" of misconduct might constitute sufficient evidence of oppressive conduct to compel liquidation without a showing of inevitable ruin. *Central Standard Life Insurance Co. v. David, supra* at 50.

Plaintiff contends those in control of defendant-company have acted oppressively in refusing to attend the special shareholders' meetings called by plaintiff, voting themselves twenty-year employment contracts and in concealing corporate financial information from her. The first allegation concerns two special shareholders' meetings called by plaintiff in midsummer 1972. The meetings were called when the company was suffering serious losses from strikes, inclement weather and the depressed condition of the construction industry generally.

---

4. *Scottish Co-op. Wholesale Soc'y, Ltd. v. Meyer,* [1958] 3 All E.R. 66, 71, 86 (H.L.) construing a similar provision under The [British] Company Act of 1948, 11 & 12 Geo. 6, c. 38, § 210.

5. *Edler v. Edler & Watson, Ltd.,* [1952] Sess. Cas. 49, 55 also construing the English Company Act.

Notices were sent to all owners but none of the controlling shareholders attended either meeting.

█ It is plaintiff's argument that failure to attend these meetings constitutes "oppressive" conduct within the meaning of § 351.485. She urges that in light of the serious losses suffered by the company, good faith and fair dealing required the controlling persons to account for the operations of the business to the shareholders at these special meetings. While the law places equitable limits on the actions of controlling shareholders which might operate to the detriment of the minority, there is no affirmative duty compelling shareholders to attend or participate in shareholders' meetings. *Hall v. Hall,* 506 S.W.2d 42, 45[7, 8] (Mo.App.1974). Under these circumstances, failure of the controlling shareholders to attend the special shareholders' meetings is not evidence of "oppressive" conduct. Plaintiff has shown no injury to herself. The record demonstrates that plaintiff received interim profit-loss statements in August and again in October of 1972 providing some information on the operations of the company. In addition, the annual shareholder's meeting was held three months after the special meetings called by plaintiff and was attended by the controlling shareholders.

Plaintiff's second allegation concerns the twenty-year employment contracts of Ralph and Donald Fix and F. Joseph Weidinger. Plaintiff admits approving the contracts when originally executed; however, she now claims that the contracts are oppressive as they are incongruous with fair dealing in a family corporation. She does not contend the compensation paid was excessive but complains of the contract's duration.

█ Long-term employment contracts for corporate officers present problems, running afoul the general maxim that management and control of the corporation is vested in the board of directors. See *Streett v. Laclede-Christy Co.,* 409 S.W.2d 691 (Mo.1966). Such contracts also seem at variance with the spirit of § 351.485, RSMo.

1969, authorizing removal of corporate officers and employees at the pleasure of the board. Notwithstanding such problems, the twenty-year employment contracts for the three managing officers does not per se constitute oppressive conduct. However, the duration of the contracts coupled with the company losses and the sale of corporate assets makes the salary increases voted to those in control increasingly suspect.

The exhibits disclose sale of corporate assets by years as follows: 1970, 7.65%; 1971 (the year of the officers' bonuses), 4.31%; 1972, 1%. Twelve percent of all assets were sold during this three-year period. In the opinion of the president of the Charter Bank of Jennings, Missouri, the initiating bank in defendant's line of credit, the sale of defendant's assets would yield little more than the outstanding bank loans. While there is contrary testimony, it is clear that further sale of corporate assets could well jeopardize plaintiff's position, calling for immediate superintending control by the court in a subsequent action. The net worth of the company in 1963 was approximately $353,087 and the stock, $17.07 a share. The book value of plaintiff's shares was $143,973 in that year. By 1972 the company's net worth had dropped to $328,967, a decline of $24,120; the value per share sagged to $15.51; the book value of plaintiff's shares was only $133,541, reflecting a loss of $13,232. The company's unhealthy financial condition and its loss of net worth is markedly increased when measured against the inflationary trend during the ten years involved. As shown by Plaintiff's Exhibit R–2, the company is being pressured to sell further assets, in particular its real estate holdings on U.S. Highway 270. If this occurs and the money dissipated consistent with prior practices of those in control, plaintiff's holdings will be even more seriously jeopardized. In such event we foresee the company immediately exposed to a suit for remedial action and superintending control by the court, notwithstanding the fact that the shareholders authorized the sale of all "nonbusiness assets" at the 1970 shareholders' meeting.

We are not advised of the current status of the corporate assets but all parties may be advised by this decision concerning the future course of the corporation and the activities of its managing officers.

■ Plaintiff's third allegation concerns her charge that the persons in control concealed financial information from plaintiff and her representative on the board, Carl R. Moehlenhoff. Her contentions in this regard are somewhat obscure, directed not at concealment but rather at the form in which the financial information was presented and subtle interference with her right to free access of the records. The record shows that plaintiff and Mr. Moehlenhoff received the annual audit reports and were given access to the corporation's books and records *on demand.* Prior to the institution of the present action interim profit-loss statements were prepared for dissemination at directors' meetings. Sometime after the present action was instituted unaudited interim statements were no longer provided plaintiff. Financial information offered her was limited to audited statements and to the books and records. At the 1973 annual shareholders' meeting, shortly before the trial commenced, plaintiff, through her attorney, submitted a list of questions to the officers requesting certain financial information which they took under advisement, agreeing to schedule another meeting for discussion of the questions. Plaintiff was offered access to the corporate books and her representative Carl R. Moehlenhoff inspected them on one occasion.

The primary complaint appears to be that management should have provided her with monthly profit and loss statements as she cannot adequately gain such information from an inspection of the books. Additionally, management should utilize more sophisticated accounting methods, i. e. cost accounting records. Plaintiff has cited no authority supporting her contentions and we have found none through our research.

The record demonstrates that the controlling shareholders have satisfied their legal obligation to plaintiff under § 351.215, RSMo.1969, by providing access to the corporate records and by providing annual audit reports and financial statements. The officers were seemingly within their authority, after the institution of this action, in limiting plaintiff's access to any internal financial reports prepared for management use. *State ex. rel. Jones v. Ralston Purina Co.,* 358 S.W.2d 772, 778[3] (Mo.1962).

■ Plaintiff next contends that the controlling officers engaged in illegal price fixing contrary to § 416.040, RSMo.1969, the statute in force in 1972.[6] In July of 1972, defendant Fix Material Company, Inc., increased its price an average of $.75 per unit. Management had received information from various customers and salesmen that ready-mix companies throughout the industry were planning to raise their prices and three of defendant's competitors informed the company by letter that they intended to raise their price per unit by $.75 on June 1, 1972. At the 1972 annual shareholders' meeting Donald Fix made the following remarks:

> "Mr. Chairman, there's one item that hasn't been brought up either this evening or at our informal get-togethers that hurt our yardage in July. It was unofficially and without collusion, I don't know how you say, spread around or decided upon that an increase would take place in, the first of July, in ready-mix concrete. We so increased our prices on a number of jobs and in some of our bid work only to find that it wasn't unanimous. Those who played their neat little trick ended up with the jobs and we ended up with nothing."

Plaintiff argues that these remarks with other pertinent evidence constitutes proof of illegal and oppressive conduct in the form of price fixing contrary to the statute. Further, the fact that defendant raised its prices at the same rate and at the same

6. The Missouri Anti-trust Law was substantially revamped in 1974 and may be found at §§ 416.011 to 416.161, Laws 1974.

time as some competitors when the market was depressed is evidence of conscious parallelism of action and therefore an illegal arrangement, contract, agreement, combination or understanding under § 416.040.

To make a submissible case under the statute plaintiff must show that the controlling shareholders entered into an agreement, contract, combination or understanding with one or more persons and that this combination tends to lessen competition. *Missouri Portland Cement Co. v. Denny Concrete Co., Inc.*, 499 S.W.2d 432, 436[1, 2] (Mo.1973); *State v. Miles Laboratories*, 282 S.W.2d 564, 568[3] (Mo. banc 1955). Plaintiff has not sustained her burden. That defendant raised prices the same as some of its competitors is not enough, absent additional facts showing that the decisions of defendant and its competitors were somehow interdependent. See *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 541–542, 74 S.Ct. 257, 98 L.Ed. 273 (1954).

As an independent basis for liquidation, irrespective of the alleged illegal and oppressive acts, plaintiff argues that defendant Fix Material Company, Inc., has failed to fulfill its corporate purpose of operating at a profit for its shareholders. In support of her contention, plaintiff cites various cases from other jurisdictions where corporate dissolution has been ordered on this basis under general equity powers. Such a claim is not cognizable in Missouri. As discussed previously, prior to 1943 our courts had no jurisdiction to dissolve a corporation and distribute its assets. *Handlan v. Handlan, supra* at 951. The Missouri Supreme Court in *Milgram v. Jiffy Equipment Co.*, 362 Mo. 1194, 247 S.W.2d 668, 673[6] (1952), declared that the statute alone established a basis for relief. By advancing "failure of the company to fulfill its corporate purpose" as a basis for liquidation independent of the statute, plaintiff presents no claim upon which relief can be granted. This is not to say that continued corporate existence without a reasonable prospect for profitable operation might not be a circumstance of demonstrating "op-

pression." See *Polikoff v. Dole & Clark Bldg. Corp.*, 37 Ill.App.2d 29, 184 N.E.2d 792 (1962).

We conclude that while those in control of defendant Fix Material Company, Inc., were at times antagonistic, plaintiff has failed to sustain her burden of proof under § 351.485. The evidence of oppressive and illegal conduct on the part of the controlling shareholder, though substantial, is insufficient to warrant corporate dissolution.

This case points up the position of frustration and corporate impotence which minority shareholders sometime find themselves, particularly in closely-held corporations. But we emphasize it is not the function of the court in equity to lightly disregard the plight of those so situate. Here the combination of long-term management contracts to controlling shareholders, heavy corporate losses coupled with sale of corporate assets and salary increases to those in charge, comes narrowly close to a level of oppressive or illegal conduct within the meaning of the statute. If the conditions continue in the direction described, a future action by those aggrieved might well produce a different result. The judgment is affirmed.

WEIER, P. J., and DOWD, J., concur.