Lester J. JACKSON et al.,
Plaintiffs-Respondents,

v.

ST. REGIS APARTMENTS, INC.,
Defendant-Appellant.

No. 38444.

Missouri Court of Appeals,
St. Louis District,
Division 3.

April 4, 1978.

Greenfield, Davidson, Mandelstamm & Vorhees, Robert M. Hamlett, Lawrence N. Doreson, St. Louis, for defendant-appellant.

Ira M. Young, St. Louis, for plaintiffs-respondents.

GUNN, Presiding Judge.

This appeal involves a class action brought by shareholders of a corporation alleging oppression by majority shareholders of the corporation.

Plaintiffs-respondents, as alleged minority shareholders in St. Regis Apartments, Inc., brought a class action against St. Regis alleging oppression by the majority of shareholders. The trial court held that the majority shareholders were guilty of oppression in breach of their fiduciary duties to the minority shareholders by maintaining a system of unequal service charges for equal services. Appellant, as an individual shareholder and as representative for at least three other shareholders, was granted leave to intervene as defendant-appellant to prosecute this appeal after St. Regis Apartments, Inc., the original appellant, was granted leave to withdraw as a party to the proceeding.

The trial court found "that the action of defendant [St. Regis], as carried out by its board of directors and maintained by its majority shareholders in charging unequal service fees for equal services to the shareholder-occupants of the St. Regis Apartments, Inc., is oppressive . . . [and] constitutes a breach of the fiduciary duty owed to the minority shareholder-occupants." St. Regis was thereby enjoined from imposing upon the shareholder-occupants unequal service fees for equal services. For the reasons which follow, we reverse the judgment.

Prior to 1951, the St. Regis Apartments were privately owned rental property in the City of St. Louis. In that year, the tenants joined together to form a Missouri Corporation, St. Regis Apartments, Inc., for the purpose of purchasing the apartment building and operating it as a cooperative apartment. Forty-seven shares,[1] coinciding with specific apartment units in the building, were authorized and issued. A single share of stock was sold to each tenant for $5,319.15, which gave the tenant the right to lease his apartment from the St. Regis Corporation. Subsequent sales of St. Regis stock have been private transactions between the individual shareholder and prospective purchaser with the value of the shares varying considerably depending on the condition of the apartment and sales skills of the seller.

Although the individual shares of St. Regis stock were originally sold for a uniform amount, the rents have never been uniform among the tenants. At the time of incorporation the shareholders agreed to retain the rental structure then in existence which varied by as much as 30–35% between the most and least expensive apartments.[2] In later years the tenants' monthly payment was referred to as a service fee rather than rent, and the shareholders signed an occupancy agreement rather than a lease. According to the occupancy agreement, which all shareholder tenants were required to sign, the funds received from the collection of service fees were to be used to provide common services to all tenants, i. e., garbage service, water, heat, light and maintenance for common areas, insurance, property taxes, and other items. The by-laws restated the agreement that the rent to be paid for each apartment would be the same amount being paid on

---

1. A forty-eighth share for designated use as a manager's apartment was authorized but not issued.

2. Although there was no direct explanation for the disparity in service charges (rent) for the various apartments, the exhibits received at trial show a clear pattern. The St. Regis Apartment buildings are divided into three courts with apartments on the east and west side of each court. The service charges are greater for the apartments on the upper floors and those located on the outer wall of the east and west courts.

the effective date of the by-laws and provided that there could be no increase in rents without an affirmative vote of the holders of 32 shares of St. Regis stock.

The non-uniform rental or service charges have continued to the present with the only change having been made in 1972 when the by-laws were amended to provide for an equal dollar amount increase rather than a percentage increase when rental increases were approved. At the time of the trial the range of rents paid was as follows:

| | | | |
|---|---|---|---|
| 16 | units | – | $264.10 |
| 3 | " | – | 272.82 |
| 15 | " | – | 281.53 |
| 2 | " | – | 290.97 |
| 5 | " | – | 309.15 |
| 1 | " | – | 328.02 |
| 5 | " | – | 336.73 |

Plaintiffs, who are present shareholders, filed this suit in equity alleging that the system of unequal service fees maintained by St. Regis is illegal and constitutes oppression by the majority of the shareholders. The suit was maintained as a class action [3] and sought injunctive relief to prohibit further imposition of unequal charges for similar services.

Three shareholders testified for plaintiff. Each stated that when he negotiated for the purchase of his share from the previous owner he was informed of the amount of service fee for the apartment but not of the variance in fees between the different apartments. Each acknowledged that the fee paid was reasonable and fair. Moreover, each admitted on cross-examination that neither the seller nor the corporation ever represented that the fees were equal. Each witness merely assumed that the fees charged were equal because of the cooperative nature of the corporation.

When one of the plaintiffs learned that the fees were not equal, she sought an explanation from the directors who told her that the fee structure had been unequal since the corporation was formed. At the plaintiff's behest, a special meeting of the shareholders was called for the purpose of

considering her plan for equalization of fees. The plan was defeated by a simple majority, and this suit followed.

After hearing the foregoing evidence the trial court found that the services rendered by St. Regis were equal as to each apartment unit and that there was no evidence to explain or justify the variance in service fees. The court found that the service fee structure was inequitable and arbitrary. It further found that the action of the St. Regis Board of Directors and the majority of the shareholders in maintaining the service fee structure was a breach of their fiduciary duties toward the minority shareholders and constituted illegal oppression. Those 34 shareholders who paid the lowest service fees were regarded as the majority while those 13 shareholders who paid the highest fees were regarded as the minority. The trial court then concluded that as a matter of law the majority had the burden to prove good faith and the inherent fairness of any transaction with the corporation and that they had failed to meet their burden. By way of relief the trial court enjoined St. Regis from imposing a service fee structure which established unequal fees for equal services and ordered it to institute a system of equal fees for the same or similar services.

As a preliminary matter, we must rule on a motion by a resident of St. Regis Apartments to dismiss the case for mootness. While this appeal was pending, Henry C. Lowenhaupt filed a motion to dismiss the appeal alleging that the by-laws of St. Regis had been amended to establish service fee charges different from those previously in effect, as well as from those ordered by the trial court. Movant further stated that all other parties to the suit acquiesced in the by-law revision thereby ending all controversy. For these reasons movant argues that the appeal has been rendered moot.

■ A cause should be dismissed as moot when the question presented for a

---

**3.** The shareholders were given notice of the suit and an opportunity to participate. Seven of the 47 shareholders joined with plaintiffs,

and the remaining 40 joined with defendant St. Regis.

decision seeks a judgment which if rendered would have no practical effect on any existing controversy. *State ex rel. Seidl v. Jefferson Cty. Bd. of Ed.*, 548 S.W.2d 853 (Mo. App.1977); *Western Auto Supply Co. v. Banner*, 288 S.W.2d 402 (Mo.App.1956). In this instance there clearly exists a continuing controversy which may be resolved by a decision of this court. Although movant in his unverified motion provides us with no specific information as to the terms of the new by-law or proof that it was duly approved, he does admit that it is not in conformance with the valid order of the court below. Moreover, it is manifest by intervenor's prosecution of this appeal that all parties do not accept the new by-law provision but seek to retain the original system of unequal fees. Because there remains a continuing controversy as to the appropriate fee structure, the appeal is not moot. The motion to dismiss is overruled.

■ The trial court in its conclusions of law found that the majority shareholders had the burden to prove the inherent fairness of the service fee structure and held that they failed to meet their burden. We will assume arguendo that the trial court's determination as to the membership of the class of majority shareholders was correct, i. e., those 34 shareholders paying the lowest rents. It is true that the majority of controlling shareholders in voting on extraordinary corporate matters have a fiduciary duty to refrain from abusing their control so as to give themselves a profit at the expense of the minority. *Fix v. Fix Material Co., Inc.*, 538 S.W.2d 351 (Mo.App.1976); Henn, Law of Corporations § 240 (1970). It does not follow, however, that because majority shareholders under certain circumstances may assume the status of technical fiduciaries that plaintiffs by filing a suit for oppression are relieved of the burden of proving their case. See *Jarvis v. Boatmen's Nat'l Bank of St. Louis*, 478 S.W.2d 266 (Mo.1972); *Kirtz v. Grossman*, 463 S.W.2d 541 (Mo.App.1971). This court in *Fix v. Fix Material Co., Inc.*, supra, held that in a suit under § 351.485 RSMo.1969 alleging oppression, the complaining shareholder has the burden of proving equitable grounds for relief. We believe that the same rule should be followed in non-statutory suits alleging oppression by the majority shareholders.

■ Under plaintiffs' evidence, there was no showing of unfair dealing between the directors or majority of the shareholders and the corporation. If there had been proof of the existence of such personal transactions with the corporation, the directors or majority shareholders involved would have incurred the burden of proving that they had gained no unconscionable or secret profits as a result and that they had dealt with the corporation fairly, honestly and in good faith. *Simpson v. Spellman*, 522 S.W.2d 615 (Mo.App.1975). Before the burden shifts from the complaining shareholders, however, they must prove the existence of a transaction between the corporation and the director. *Ramacciotti v. Joe Simpkins, Inc.*, 427 S.W.2d 425 (Mo.1968); *Yax v. DIT–MCO, Inc.*, 366 S.W.2d 363 (Mo. 1963). Under the facts of this case there were no such transactions. The agreement to pay a specified rent or service fee for a given apartment was a non-negotiable incident of owning a share of St. Regis stock. It was not a transaction entered into after the individual became a shareholder or director but was a prerequisite to becoming a shareholder. The complaining shareholders, having shown no transaction between the directors or majority shareholders after they became a part of the corporation, retain the burden of proving that the actions of the defendants amounted to oppression.

■ We believe that plaintiffs have failed to meet their burden of proof and hold as a matter of law that under the evidence in this case there has been no showing of oppression by any controlling group of shareholders. Plaintiffs do not point to any affirmative action undertaken by the majority which is oppressive. Their sole complaint is that the majority of the shareholders in the exercise of their judgment have refused to amend the rental or service charge structure which has been in effect since the corporation was formed.

We do not find such refusal to be oppressive.[4]

■ There is no clearly identifiable standard by which to judge when a vote of the majority amounts to oppression. Shares of stock are private property and generally may be voted in any manner the owner sees fit. Moreover, conduct by the majority shareholders to be oppressive need not be illegal or fraudulent. The existence of oppression must be determined on a case by case basis taking into account the specific facts of each case. In general, however, the term oppression suggests harsh, dishonest or wrongful conduct and a visible departure from the standards of fairdealing which inure to the benefit of majority and to the detriment of the minority. *Fix v. Fix Material Co., Inc.,* supra.

It is an undisputed fact that shareholder-tenants living in the St. Regis Apartments are assessed unequal service fees for the same or similar services. But in this case all of the original shareholders knowingly promulgated the unequal service fee when the corporation was formed. It was not suddenly thrust upon the unsuspecting minority by a vengeful majority group seeking to reap the corporate benefits as their own. The decision to adopt the staggered service fee was embodied in the original by-laws. In the judgment of the original shareholders, as demonstrated by their acceptance, the system of fees was deemed fair and equitable. We note that when the corporation was formed, certain apartments, because of their condition, were more valuable than others. Yet, each tenant paid an identical amount for his share. Thus, the discrepancy in the actual value of the apartment and the amount paid for the share was reflected by the higher rental fee for certain of the apartments.

4. We have reviewed the authorities cited by plaintiffs-respondents and find them infelicitous as to the factual situation on issue before us. See, e. g., *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Southern Pac. Co. v. Bogert,* 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919); *Perlman v. Feldmann,* 219 F.2d 173 (2nd Cir. 1955); *Zahn v. Transamerica Corp.,* 162 F.2d 36 (3rd Cir. 1947).

■ Absent fraud, which has not here been alleged, it is not appropriate for this court to substitute its judgment as to the proper management of the corporation for that of the incorporators and their successors. *Brown v. Citizens' State Bank,* 345 Mo. 480, 134 S.W.2d 116 (1939); *Putnam v. Juvenile Shoe Corp.,* 307 Mo. 74, 269 S.W. 593 (banc 1925).

"[C]ourts of equity will not, as a general rule, exercise jurisdiction to control or interfere in the management of the corporate or internal affairs of the corporation. The court has no power to interpose its authority for the purpose of adjusting controversies relative to the proper mode of conducting the corporate business. Errors of judgment on the part of the officers are not grounds for the interference of equity. For the court to intervene there must be actual or threatened acts which are ultra vires, fraudulent, and injurious, and are an abusive [sic] power, and are acts of oppression on the part of the Corporation of its officers."

*Golden v. St. Joseph Milk Producers' Association,* 420 S.W.2d 31, 33 (Mo.App.1967).

Under § 351.290 RSMo. (Supp.1975), the by-laws of a corporation may contain any provision for the regulation and management of the corporation which is not inconsistent with the law or the articles of incorporation. "By-laws are the rules of law adopted by the corporation for the regulation of its own acts and concerns and of the rights and duties of its members among themselves. (cites omitted) When by-laws have been duly adopted they are obligatory upon all the members of the corporation." *Smoot v. Bankers' Life Ass'n,* 138 Mo.App. 438, 120 S.W. 719, 728 (1909). In this case, the mere existence of unequal service fees violates no provision of the articles of incor-

See also, Annot. 56 A.L.R.3d 358, "What amounts to 'Oppressive' Conduct Under Statute Authorizing Dissolution of Corporation at Suit of Minority Shareholders" (1974), for a thorough treatment on certain aspects of oppression by majority shareholders.

poration or of the law. The refusal of the shareholders to amend the by-laws to implement a system of equal fees does not constitute oppression, particularly where, as here, the arrangement for rental fees was acquiesced in by the incorporators of St. Regis.

The judgment of the trial court is reversed.

WEIER and KELLY, JJ., concur.