Jon HERBIK, et al.,
Plaintiffs-Respondents,

v.

Thomas RAND, et al.,
Defendants-Appellants.

No. 52151.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 16, 1987.

Joseph E. Martineau, St. Louis, for defendants-appellants.

John P. Zimmerman, St. Charles, for plaintiffs-respondents.

PUDLOWSKI, Presiding Judge.

Appellants, defendants below, Thomas Rand, Timothy Rand, Edward Lemay, James Banker and American Winery Incorporated, appeal from an order of the Circuit Court of St. Charles County enjoining the issuance of any stock of American Winery, Inc. at ten dollars or less per share and awarding attorney's fees, paralegal fees and expenses against American Winery, Inc. and in favor of respondents, plaintiffs below, Jon Herbik and Frank A. Conrad. Appellants contend that the grant of the injunction was erroneous because the issuance of new stock at ten dollars per share was approved by the necessary quorum of shareholders and was not illegal, fraudulent or oppressive. They also contend that the trial court erred in awarding attorney's fees because no special circumstances required for assessment of attorney's fees against the non-prevailing party were present.

American Winery, Inc. is a closely held corporation with six shareholders. When incorporated in March 1982, American Winery was authorized to issue one thousand shares of no par value stock, and it did so. Respondents Jon Herbik and Frank A. Conrad received 300 shares and 50 shares respectively. Appellants Thomas Rand and Timothy Rand jointly received 550 shares. Appellants Edward Lemay and James Banker each received 50 shares. During the time period relevant to this cause, the shareholders, except for respondent Herbik also each held positions with the corporation.

Respondent Frank A. Conrad served as a corporate director. Appellant Timothy Rand served as a corporate director and as president and secretary of the corporation. Appellant Thomas Rand served as Chairman of the Board of Directors. Appellant Edward Lemay was the corporation vice-president; and appellant James Banker was the executive vice-president, general manager and treasurer. Banker's duties included managing the corporation's plant facility.

On March 3, 1986, a meeting of the shareholders was held at which the corporation's immediate need for capital was discussed. All shareholders were present. Previous unsuccessful attempts had been made to secure new loans. According to witnesses, including respondent Conrad, there had been discussions regarding the serious need for an influx of capital as far back as November of 1985. At the March 3, meeting, Timothy Rand moved that the shareholders approve a proposed "1986 Capital Plan" which called for an amendment to American Winery's Articles of Incorporation to increase the number of shares which the corporation would have authority to issue from 1,000 to 50,000 shares at no par value. The plan also proposed that 20,000 of the shares be immediately issued at a ten dollar per share price. An unspecified second offering was to follow shortly in order to provide the funds necessary to keep the corporation solvent. All offerings were to be limited to existing shareholders, each of whom would be permitted to purchase the number of shares necessary to maintain his proportional interest in the company. Each shareholder's preemptive rights were thus protected. The plan called for the sale of the first 200,000 shares to be issued under the plan to be consummated "on or before April 1, 1986."

On March 24, 1986, respondent's Herbik and Conrad initiated the cause *sub judice* requesting injunctive and equitable relief. The petition contains six counts. Counts I and II were brought against the corporation pursuant to Section 351.485 RSMo 1986. Count I sought injunctive relief and Count II sought various equitable remedies. Count III was brought against Thomas Rand. Count IV was against Tim-

othy Rand; and Counts V and VI were against Edward Lemay and James Banker respectively. All four of the counts against the individual defendants alleged breach of fiduciary duty and fraud and sought unstated actual damages and one million dollars in punitive damages.

Only Count I is before this court. The counts against the individual defendants were separated from Counts I and II, and they remain unadjudicated. Count II was dismissed with prejudice and no appeal was brought from that dismissal.

The court's order specified that the basis for the injunction was that "said price of Ten Dollars ($10.00) per share is below fair market value of said stock." That order was issued April 9, 1986 after a combined hearing on the preliminary and permanent injunctions. The order was amended July 24, 1986 to award the attorney's fees, paralegal fees and expenses alleged in appellant's second point to be erroneous. The trial court found unusual circumstances sufficient to justify the award in that plaintiffs-respondents, Conrad and Herbik, had no alternative method to stop the sale of the stock and "that the intent of the 1986 Capital Plan in addition to raising capital was to put pressure on and/or oust plaintiffs as minority stockholders."

■ We note first that Count I was against the corporation alone. The individual defendants were not parties under that count and nothing in the record before this court indicates that the petition was amended at the hearing either by request or in order to conform to the evidence presented at the hearing. This alone would be a sufficient basis for this court's modification of the injunction to apply only to the corporation.

Under Rule 73.01(c) we "review the case upon both the law and the evidence" giving "due regard to the opportunity of the trial court to have judged the credibility of witnesses" in determining whether the trial court erred in granting the injunction.

Section 351.485 allows a court of equity to intervene on behalf of minority shareholders who demonstrate that the majority shareholders have taken actions which are "illegal, oppressive or fraudulent." *See, Fix v. Fix Material Company, Inc.,* 538 S.W.2d 351, 357 (Mo.App.1976).[1] There was no attempt at the hearing to prove an illegal act or a misrepresentation or the concealment of a material fact.[2] Thus respondents did not demonstrate that appellants' actions were illegal or fraudulent. Respondents did, however, contend, and the trial court found, that respondents demonstrated that the action taken with regard to the "1986 Capital Plan" were oppressive.

■ The existence of oppression under Section 351.485 must be determined on a case-by-case basis. "In general, however, the term oppression suggests harsh, dishonest or wrongful conduct and a visible departure from the standards of fair-dealing...." *Jackson v. St. Regis Apartments, Inc.* 565 S.W.2d 178, 183 (Mo.App. 1978).

To warrant the interposition of the court in favor of the minority shareholders ..., where such action is within the corporate powers, a case must be made out which *plainly shows* that such action is *so far opposed to the true interests of the cor-*

---

1. The statute lists liquidation as the remedy. However, alternative remedies in actions brought under Section 351.485 have been approved by case law. *See, e.g. Fix.*

2. Respondents did allege and did testify that the plan was never placed on the floor for a vote of the shareholders as required by Section 351.090 RSMo 1986. The transcript of the meeting, however, indicates that a vote was taken. Appellants voted for the plan; respondents against. It was undisputed that the primary purpose of the March 3, 1986 meeting was to discuss the 1986 Capital Plan. Also, no new shares had

been issued when this action was brought shortly after the meeting. If the plan had not been passed and was not in the process of being brought to culmination, there would have been no basis for the action. Finally, after the trial court handed down its order with regard to Count I, both respondents admitted in response to interrogatories submitted with reference to Counts III though VI that the plan had been voted on at the March 3, meeting. The lack of a vote cannot therefore stand as an equitable basis for the grant of an injunction; nor did the trial court grant its injunction on that basis.

*poration* itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, *regardless of the consequences to the company,* and in a manner inconsistent with its interests.

*Bellows v. Porter,* 201 F.2d 429, 433–434 (8th Cir.1953) (applying Missouri law). "Shares of stock are private property and generally may be voted in any manner the owner sees fit." *Jackson, supra,* 565 S.W.2d at 183.

 Under Section 351.185 "[s]hares without par value may be issued for such consideration as may be fixed from time to time by the board of directors...." In the absence of actual fraud there is no requirement that shares must be sold at fair market value. *Saigh v. Busch,* 403 S.W.2d 559, 564 (Mo.1966). The business judgment rule vests the directors and shareholders with wide latitude in making judgments that affect the running of the corporation.

> And in the conduct of a corporation's internal affairs the principle that the majority must rule is rigidly upheld in equity in the absence of fraud, oppression, etc. [Citation omitted]. Nor should a court of equity interfere in doubtful cases where the action of the majority may be susceptible of different constructions; but [only] where such action is so wholly opposed to the interests of the corporation *and* the minority stockholders that the conduct of the majority amounts to a wanton or fraudulent destruction of the rights of the minority, a court of equity will take cognizance of the matter.

*Brown v. Citizens State Bank,* 345 Mo. 480, 134 S.W.2d 116, 121 (1939) (emphasis added).

There was no dispute that an immediate influx of capital was necessary to the survival of the corporation. There was no evidence that either of the respondents would have been unable to purchase his pro rata amount of stock. To the contrary, at the March 3, 1986 meeting respondent Conrad proposed that the plan be amended to raise the price of the new shares. Respondents' theory of oppression was, in fact, that the value of their current stock would be diluted by the issuance of new shares at a ten dollar per share price. That figure, however, was arrived at after consultation with various persons and had been approved by the corporation's bank, to which all the outstanding shares of stock had been pledged as collateral for loans.

 The corporation was operating in the red; and since it was a close corporation which was not publicly traded, there was no easy way to ascertain the value of each share. The evidence indicated that any further amounts invested into the business might be lost if it folded. We find after reviewing the cause on both the law and the evidence that there was no basis for a ruling that respondents had proved a case of oppression under Missouri law. We also find no basis for a finding of unusual circumstances sufficient to justify an award of legal fees, paralegal fees and costs to respondents. The judgment of the trial court is therefore reversed and the injunction is dissolved.

CRANDALL and KAROHL, JJ., concur.