Martha S. SUTHERLAND, As Trustee of the Martha S. Sutherland Revocable Trust Dated August 18, 1976, Appellant,

v.

Mark SUTHERLAND, An Individual; Steven Pearson, an Individual; Perry Sutherland, An Individual; and Steven Scott, an Individual, and Sutherland Lumber Company of Kansas CITY, LLC., Respondents.

No. WD 72493.

Missouri Court of Appeals, Western District.

Sept. 13, 2011.

88

Stewart Kusper, for Appellant.

Phillip Bledsoe, for Respondents.

Before Division Three: JOSEPH M.
ELLIS, Presiding Judge, VICTOR C.
HOWARD, Judge and THOMAS H.
NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Martha Sutherland, as Trustee for the Martha Sutherland Revocable Trust, appeals from a judgment entered in the Circuit Court of Jackson County in favor of the defendants in a derivative action filed by Appellant against Mark Sutherland, Steven Pearson, Perry Sutherland, and Steven Scott and, nominally, against Sutherland Lumber Company of Kansas City LLC ("SLKC"). For the following reasons, the judgment is affirmed.

Appellant owns a membership interest in SLKC. Mark Sutherland and Pearson are the two managing members of SLKC and previously held managerial positions in its predecessor, Sutherland Lumber Company of Kansas City, L.P. ("SLKCLP"). Mark Sutherland, Pearson, and Perry Sutherland all also hold membership interests in SLKC and were limited partners in SLKCLP. Scott was an employee of Cimarron Lumber & Supply Company, Ltd., ("Cimarron") which provided accounting, administrative, and wholesale buying services to SLKC and

other members of the Sutherland family of companies.

In 1996, SLKCLP leased a piece of property in Liberty, Missouri for the operation of a retail store. That lease contained a provision granting SLKCLP a right of first refusal to purchase the property from the lessor if an offer were made by a third party. When the lessor received an offer on the property in 2001, SLKCLP elected not to exercise its right of first refusal and, instead, assigned that right to Cimarron, which purchased the property shortly thereafter. In 2002, the McDonald's Corporation approached Cimarron about purchasing a portion of the parking lot on the Liberty property to construct and operate a restaurant. SLKC, which had succeeded SLKCLP by then, agreed to terminate its lease on that portion of the parking lot, and Cimarron sold the specified portion of the Liberty property to McDonald's.

In July 2004, Appellant sent SLKC a formal demand to inspect SLKC's books and records. SLKC responded by asking Appellant to sign a confidentiality agreement prior to inspecting the books and records. Appellant refused to sign the confidentiality agreement and filed suit in the Circuit Court of Jackson County seeking access to the books and records. That case was ultimately settled.

In 2007, Appellant filed a derivative action against Mark Sutherland, Pearson, Perry Sutherland, and Scott and, nominally, against SLKC, asserting claims related to the company's handling of the Liberty property and the company's demand that she execute a confidentiality agreement to access the company records. That petition was subsequently dismissed because Appellant had failed to make a demand of SLKC's managing members before filing suit.

After her first petition was dismissed, Appellant demanded that SLKC pursue litigation on the grounds she had asserted in her dismissed petition. On July 19, 2007, a meeting of all the members of SLKC was held to consider Appellant's demand. Following discussion, the members voted against pursuing the litigation proposed by Appellant. The members also voted to ratify the actions of the general partners in assigning Cimarron the right of first refusal to the Liberty property. The members further voted to ratify SLKC's decision to demand a confidentiality agreement in association with Appellant's request to inspect the books and records of the company.

On May 9, 2008, Appellant filed the present derivative action in the Circuit Court of Jackson County. In the first count, Appellant claimed that Mark Sutherland and Pearson breached their fiduciary duty to SLKC and SLKCLP by causing the right of first refusal to the Liberty property to be transferred to Cimarron, for causing SLKC to later release its leasehold interest in the property sold by Cimarron to McDonald's without receiving compensation, and for causing SLKC to expend more than $100,000.00 to defend against Appellant's records request. In the second count, Appellant alleged waste on the part of Mark Sutherland and Pearson in expending corporate assets to defend against Appellant's records request. In count three, Appellant claimed that Perry Sutherland and Scott aided and abetted Mark Sutherland and Pearson in breaching their fiduciary duties. In her final count, Appellant claims that the defendants had conspired to commit the wrongdoing alleged in the petition.

Following a lengthy trial, the jury returned verdicts in favor of the defendants on all claims. The trial court denied Appellant's post-trial motions and entered judgment in accordance with the jury's verdicts. Appellant brings four points on appeal.

■ In her first point on appeal, Appellant claims that the trial court erred in giving the jury instructions number 11, 18, and 24. Those instructions all stated:

A fiduciary is presumed to have discharged his duties with due care and good faith and in the honest belief that he was acting in the best interests of the limited liability company, absent a showing that he put his personal interests ahead of the interest of the limited liability company.

■ "Whether a jury was properly instructed is a question of law this Court reviews *de novo*." *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010). "When reviewing claimed instructional error, we view the evidence most favorably to the instruction, disregard contrary evidence, and reverse where the party challenging the instruction shows that the instruction misdirected, misled, or confused the jury, and there is a substantial indication of prejudice." *Twin Chimneys Homeowners Ass'n v. J.E. Jones Constr. Co.*, 168 S.W.3d 488, 498 (Mo.App. E.D.2005). "[I]f the instruction is supportable by any theory, then its submission is proper." *Bach v. Winfield–Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008). "Instructional errors are reversed only if the error resulted in prejudice that materially affects the merits of the action." *Id.*

■ Appellant contends that instructions 11, 18, and 24 should have been rejected by the trial court because they did not accurately set forth the business judgment rule. "The business judgment rule protects the directors and officers of a corporation from liability for *intra vires* decisions within their authority made in good faith, uninfluenced by any other

consideration than the honest belief that the action subserves the best interests of the corporation." *Betty G. Weldon Revocable Trust v. Weldon*, 231 S.W.3d 158, 171 (Mo.App. W.D.2007) (internal quotation omitted). This rule has been codified, as it relates to limited liability companies, in § 347.088.1,[1] which provides that directors and officers of a limited liability company shall not be liable for business decisions that they believe in good faith are in the best interests of the limited liability company. The business judgment rule precludes the courts of this State from interfering with the decisions of corporate officers and directors absent a showing of fraud, illegal conduct, an *ultra vires* act, or an irrational business judgment. *Ironite Products Co. v. Samuels*, 985 S.W.2d 858, 862 (Mo.App. E.D.1998); *Jackson v. St. Regis Apartments, Inc.*, 565 S.W.2d 178, 183 (Mo. App. E.D.1978).

In arguing that the challenged instructions do not accurately reflect the business judgment rule, Appellant does not challenge the legal accuracy of the language of the instruction and the presumption espoused therein. Instead, Appellant notes that, under Missouri case law, "[i]n an equitable action to recover profits, once the corporation's transaction with a director, officer, or entity in which he or she has an interest has been established, the burden shifts to the officer or director who must show that he or she did not obtain secret profits and that the transaction was conducted fairly, honestly and openly." *Zakibe v. Ahrens & McCarron, Inc.*, 28 S.W.3d 373, 382 (Mo.App. E.D.2000); *see also Jackson*, 565 S.W.2d at 182 (In a class action alleging oppression by majority shareholders, "[i]f there had been proof of the existence of such personal transactions with the corporation, the directors or majority shareholders involved would have incurred the burden of proving that they had gained no unconscionable or secret profits as a result and that they had dealt with the corporation fairly, honestly and in good faith."). Appellant claims that it was error to submit a business judgment instruction where no instruction was given on this shifting of the burden.

Appellant cites no case law indicating that a business judgment rule instruction cannot be given without also instructing a jury on the burden shift that may occur in an equitable action to recover profits, and our research has uncovered none. Moreover, Appellant has failed to demonstrate prejudice resulting from the challenged instructions. Appellant contends that the evidence more than sufficiently rebutted the presumption set forth in the challenged instructions. If that was indeed the case, the jury presumably followed the instruction and rejected the presumption.

Furthermore, Instruction 9 directed the jury:

> On plaintiff Martha Sutherland's claim for breach of fiduciary duty your verdict must be for plaintiff Martha Sutherland and against defendant Mark Sutherland if you believe:
>
> First, that defendant Mark Sutherland participated in the decision on behalf of SLKC, L.P. to not exercise its right to purchase the Liberty property and have Cimarron purchase the property; and
>
> Second, defendant Mark Sutherland thereby breached his fiduciary duty, and
>
> Third, that as a direct result of defendant Mark Sutherland's breach of fidu-

---

1. RSMo Cum.Supp.2004. All other statutory references are to RSMo 2000 unless otherwise noted.

ciary duty SLKC, L.L.C. sustained damages;

Unless you believe Plaintiff is not entitled to recover by reason of Instruction No. 13.

Identical language was used in instruction number 10 against Steven Pearson. Instruction 4 further provided:

The term "fiduciary duty" as used in these instructions means a person having a duty: (1) to act with the utmost good faith in the exercise of the powers conferred on him, and (2) to act with fidelity and not to put a personal interest before the interest of the company should there be a conflict.

Thus, under the instructions given to the jury, a breach of fiduciary duty would have been found if the evidence established that the defendants put a personal interest before that of the company.

In short, the record does not reflect that the instructions misdirected, misled, or confused the jury or that there is a substantial indication of prejudice.

■■■ Appellant's real claim appears to relate to the trial court's refusal to give Appellant's proposed Instruction R, which stated:

However, if a fiduciary puts his personal interest before the interest of the company, then a fiduciary must show that the transaction was conducted fairly, honestly and openly. A fiduciary puts his personal interest before the interest of the company when an entity in which he has an interest engages in a transaction with the company.

Though not referenced in her point relied on, the rejection of this instruction is the principle focus of Appellant's argument on appeal. "If a party fails to substantially comply with Rule 84.04, which requires the appellant to 'identify the trial court ruling or action that the appellant challenges,'

then the argument is not preserved for appeal." *Hamilton v. Hamilton,* 340 S.W.3d 197, 201 (Mo.App. W.D.2011).

■■■ Even were this issue properly preserved for appeal, the second sentence of this instruction misstates the law in that not every transaction between two companies in which a fiduciary has an interest establishes, as a matter of law, that the fiduciary has put the fiduciary's interests before that of either company. The cases relied upon by Appellant certainly do not stand for that proposition. *See Zakibe,* 28 S.W.3d at 382; *see also Jackson,* 565 S.W.2d at 183. Those cases give rise to a rebuttable presumption of self-dealing where the evidence establishes that a fiduciary was involved in a transaction between two companies in which he or she has an interest. *See Zakibe,* 28 S.W.3d at 382; *see also Jackson,* 565 S.W.2d at 182. As stated in the proposed instruction, however, that presumption would not be rebuttable. The proposed instruction provides that, any time an entity in which an individual has an interest engages in a transaction with a company for whom he is a fiduciary, the fiduciary has placed his personal interests before that of the company. Indeed, the instruction does not even require that the fiduciary have knowledge of or have participated in the transaction. Moreover, the proposed instruction fails to explain the ramifications of a fiduciary demonstrating that the transaction was conducted fairly, honestly, and openly.

Finally, we note that § 347.093 provides that "[e]xcept as provided in the operating agreement, a member or manager may lend money to and transact business with the limited liability company and, subject to other applicable law, has the same rights and obligations with respect thereto as a person who is not a member or manager." Thus, while certainly a manager has a duty to act in good faith and in the

best interests of the limited liability company, § 347.088,[2] the Missouri legislature has determined that there is nothing inherently insidious about a manager of a limited liability company doing business with that company.

The trial court cannot be deemed to have committed error, plain or otherwise, in rejecting Appellant's proposed instruction. Point denied.

■ In her second point, Appellant claims that the trial court erred in instructing the jury on the doctrine of ratification in Instructions 13 and 27. Appellant argues that Missouri law does not allow for "retrospective ratification" by a limited liability company. She further contends that, even if ratification were a defense, the instruction erroneously failed to require proof that SLKC's members had full knowledge of all the material facts prior to ratification.

Instruction 13 stated:

Your verdict must be for defendants Mark Sutherland, Steven Pearson, and Steven Scott on Plaintiff's claim of breach of fiduciary duty relating to the decision not to purchase the Liberty property pursuant to its right of first refusal and to assign that right of first refusal to Cimarron Lumber & Supply Company if you believe:

First, at or prior to the meeting on July 19, 2007, the members of Sutherland Lumber Company of Kansas City, LLC, were informed of the material facts concerning Sutherland Lumber Company of Kansas City, LP's decision not to purchase the Liberty property pursuant to its right of first refusal and to assign that right of first refusal to Cimarron Lumber & Supply Company; and

Second, at the meeting of the members on July 19, 2007, a majority of the members of Sutherland Lumber Company of Kansas City, LLC, voted to approve the decision of Sutherland Lumber Company of Kansas City, LP not to purchase the Liberty property pursuant to its right of first refusal and to assign that right of first refusal to Cimarron Lumber & Supply Company.

Similarly, Instruction 27 provided:

Your verdict must be for defendant Mark Sutherland, Steven Pearson, Steven Scott, and Perry Sutherland on Plaintiff's claim of breach of fiduciary duty in relation to the decision to litigate with Plaintiff Martha Sutherland over her right to inspect and copy the books and records of SLKC, LLC if you believe:

First, at or prior to the meeting of the members on July 19, 2007, the members of Sutherland Lumber Company of Kansas City, LLC, were informed of the material facts concerning Sutherland Lumber Company of Kansas City, LLC's decision to litigate with Plaintiff Martha Sutherland over her right to inspect and copy the books and records of SLKC, LLC; and

Second, at the meeting of the members on July 19, 2007, a majority of the members of Sutherland Lumber Company of Kansas City, LLC, voted to approve the decision to litigate with Plaintiff Martha Sutherland over her right to inspect and copy the books and records of SLKC, LLC.

■ A limited liability company, like a corporation, "is an artificial being, and as an entity it must act through an agent." *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 9 (Mo.App. S.D.2002) (internal quotation omitted). "The power of a corporate officer, like that of any

2. RSMo Cum.Supp.2004.

other agent, to bind his or her corporation in contract ordinarily rests either upon such officer's actual authority or upon his or her apparent authority." *Id.*

■ "Ratification is an adoption or confirmation upon full knowledge of the facts by one entity of an act (such as entering into a contract) performed on that entity's behalf by another without authority." *Id.* "Ratification relates back and is the equivalent of authority at the commencement of the act." *Id.*

While Appellant contends that Missouri law does not permit the members of a limited liability company to ratify the acts or transactions of its managers, § 347.065.3 expressly provides that:

> An act of a member or manager which is not apparently for the carrying on the usual way of the business or affairs of the limited liability company does not bind the limited liability company unless authorized in accordance with the terms of the operating agreement, at the time of the transaction *or at any other time.*

(Emphasis added). Thus, contrary to Appellant's assertions, the Missouri legislature clearly intended to incorporate the common law related to ratification in Chapter 347.

With regard to her claim that the instructions failed to require proof that SLKC's members had "full knowledge of all the material facts prior to ratification," the instructions required that the members were "informed of the material facts" concerning each of the challenged management decisions. The omission of the terms "full knowledge" and "all" does not alter the import of these instructions as they are clearly implicit in the instructions submitted to the jury. If the members have been "informed of the material facts," they clearly have "full knowledge" of them, and "the material facts" necessarily include "all the material facts" because the omission of

any material fact would mean that the members were not informed of "the material facts." Point denied.

■ In her third point on appeal, Appellant contends that the trial court erred in giving Instruction 28, which set forth the defense of reliance on the advice of counsel. That instruction stated:

> Your verdict must be for defendants Mark Sutherland, Steven Pearson, Steven Scott, and Perry Sutherland if you believe that Mark Sutherland or Steven Pearson reasonably relied upon information, opinions, or statements prepared or presented by legal counsel as to matters such authorized person reasonably believes are within such person's professional or expert competence.

Appellant contends that the instruction erroneously failed to require proof that the defendants had fully disclosed all of the material facts to counsel in obtaining the advice of counsel.

Under § 347.090, a manager of a limited liability company may assert as a defense reasonable reliance on the advice of counsel. That statute provides, *inter alia:*

> Unless he has knowledge concerning the matter in question that makes such reliance unwarranted, in discharging his duties under the operating agreement, an authorized person is entitled to rely on information, opinions, reports or statements . . . if prepared or presented by . . . [l]egal counsel.

*§ 347.090.1(2).* Instruction 28 substantially reflects the elements of the defense set forth in the statute, and § 347.090 does not contain an express requirement of full disclosure of all of the material facts, though such a requirement is implicit in both § 347.090 and Instruction 28.

Appellant argues that the instruction given constituted a roving commission and

that the jury could have found that the defendants "reasonably relied" upon the advice of counsel while withholding the material facts from counsel. Appellant again underestimates the import of the language contained in the instruction given to the jury. In order to find this defense appropriate, the jury was required to find that the defendants "reasonably relied upon" the opinions and statements of counsel on matters the defendants reasonably believed were within counsel's professional expertise and competence. If the jury found that a defendant withheld any material facts from counsel, reliance on the opinion of counsel would not be reasonable, and the jury would find accordingly. Thus, a requirement that the defendant disclose the material facts to counsel in order for the defense to be established was implicit in Instruction 28.

█ Appellant also attempts to argue that the evidence presented at trial was insufficient to support a defense of reasonable reliance on the advice of counsel. That argument is likewise without merit.

Mark Sutherland testified that, after receiving Appellant's demand to review the books and records of the company, he contacted attorney Greg Mermis. Mark Sutherland stated that Steve Perry, Steve Pearson, and himself all met with Mermis, explained the situation, and asked for legal advice. Mark Sutherland testified that Mermis had indicated that SLKC could insist on a confidentiality agreement before providing Appellant with access to the books and records. He further testified that Mermis responded on behalf of the company, sending Appellant a letter indicating that she would be required to execute a nondisclosure and confidentiality agreement. Appellant's claim that the evidence did not support the submission of Instruction 28 is wholly without merit. Point denied.

In her final point, Appellant claims that the trial court erred in allowing SLKC and its counsel to participate in the trial. Appellant contends that SLKC's participation substantially prejudiced her case by giving the jury the impression that SLKC believed her claims had no merit.

SLKC was named as a party to the action. It filed answers to Appellant's original petition on August 29, 2008, and to her first amended petition on July 10, 2009. SLKC's attorney participated in much of the discovery process. It was not until November 24, 2009, more than a year and a half after the action was commenced, and shortly before trial, that Appellant filed a motion *in limine* seeking to bar SLKC and its attorney from participating as a party at trial. SLKC opposed that motion. The trial court held a hearing on the motion. Following that hearing, the trial court granted Appellant's motion in part, determining that it was appropriate to allow SLKC to be represented by an attorney in the case and to modestly participate therein. The court precluded SLKC from taking a position on the ultimate outcome of the case and limited its participation to defending SLKC's internal investigation of allegations of wrongdoing by management and SLKC's process of ratifying corporate management decisions. The court specifically ruled that SLKC's counsel could call Robert ("Bob") Sutherland, as a witness, cross-examine Bob Sutherland if called by another party, and give an opening statement and closing argument in order to defend the company. Bob Sutherland, the owner representing the largest percentage of ownership of SLKC, conducted an investigation regarding the allegations of wrongdoing and ran the July 19, 2007 meeting of the SLKC membership.

Ultimately, counsel for SLKC presented a brief opening statement, explaining that

Bob Sutherland investigated allegations of wrongdoing and providing the jury with information regarding the July 19, 2007 SLKC member meeting and the ratifications. Counsel also cross-examined Bob Sutherland when he testified as an adverse witness for Appellant and questioned him regarding his involvement in the Sutherland companies, the investigation he conducted on behalf of SLKC, the July 19, 2007 meeting, and the ratifications. Finally, counsel made a brief closing argument, discussing SLKC's process for investigating the Appellant's claims and ratifying the actions of SLKC management.

Despite the trial court's limitation on SLKC's participation at trial, Appellant contends that SLKC should not have been permitted to participate at all and that she was prejudiced by that participation. We disagree.

▮▮▮▮▮ We observe initially that Appellant failed to properly preserve the issue. Following the trial court's ruling on her motion *in limine*, Appellant failed to further object to SLKC's participation at trial. "[A] ruling on a motion in limine is interlocutory and, without more, preserves nothing for appellate review." *Tauvar v. American Family Mut. Ins. Co.*, 269 S.W.3d 436, 439 (Mo.App. W.D.2008). "[A] party must object at the time of the alleged error to preserve the issue for appellate review." *Berra v. Danter*, 299 S.W.3d 690, 695 (Mo.App. E.D.2009). For this reason alone, Appellant's point must be denied.

▮▮▮▮ We gratuitously note, nevertheless, that, even were the issue properly before this Court, we would not be able to find fault in the trial court's decision to allow SLKC to participate in a limited fashion in this case. Generally, company shareholders cannot in their own right maintain an action for the recovery of company funds or property improperly diverted or appropriated by the company's officers and directors. *Place v. P.M. Place Stores Co.*, 950 S.W.2d 862, 865 (Mo.App. W.D.1996). Because the injury is to the company (the shareholders collectively), the right to maintain the suit is a right of the company and does not rest with individual shareholders. *Id.* "[S]uit, therefore, must be brought derivatively by a shareholder or shareholders who fairly and adequately represent the interests of shareholders similarly situated." *Id.* "While the shareholder who brings the action is the nominal plaintiff, the corporation on whose behalf the action is brought is the real party in interest, even though the corporation is named as a defendant and served with process as a defendant." *Sobba v. Elmen*, 462 F.Supp.2d 944, 946 (E.D.Ark. 2006). "Because the corporation is the real party in interest and any recovery by the derivative plaintiff goes to the corporation, the general rule for corporate participation in a derivative action is that 'unless the derivative action threatens rather than advances corporate interests, the corporation cannot participate in the defense on the merits.'" *Id.* at 947.[3]

***

3. Citing *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Hoffa*, 242 F.Supp. 246, 253 (D.D.C.1965) ("New York allows a corporation to expend funds in defense of a derivative action presumptively brought in its behalf when some interest of the corporation is threatened."); *Fuller v. Am. Mach. & Foundry Co.*, 91 F.Supp. 710, 711 (S.D.N.Y.1950) ("The corporation can actively defend where the interests of the corporation are threatened with injury by the relief sought in the complaint."); *Leven v. Birrell*, 92 F.Supp. 436, 444 (S.D.N.Y.1949); *Otis & Co. v. Penn. R.R. Co.*, 57 F.Supp. 680, 682 (E.D.Penn.1944) (holding that corporation can file an answer when the plaintiff's "cause of action is such as to endanger rather than advance corporate interests," but not where the cause of action is fraud against the corporate directors); *Esposito v. Riverside Sand &*

There is an exception to this general rule, however, when the interests of the corporation are threatened. *See, e.g., Alleghany Corp. v. Kirby*, 218 F.Supp. 164, 186 (S.D.N.Y.1963) (A corporation may expend funds to defend the merits of a derivative action when a corporate interest is threatened); *Otis & Co. v. Penn. R.R. Co.*, 57 F.Supp. 680, 682 (E.D.Pa. 1944) (A corporation may defend an action when the cause endangers, rather than advances, the interest of the corporation); *Nat'l Bankers Life Ins. Co. v. Adler*, 324 S.W.2d 35, 37 (Tex.Civ.App.1959) (A corporation may defend an action when the action threatens the corporation's interests). "In some situations, the corporations in whose interest the derivative action is purportedly brought will have interests adverse to those of the nominal plaintiffs bringing the action derivatively, and will of necessity be more than a nominal defendant." *Sobba*, 462 F.Supp.2d at 949 (quot-ing *Swenson v. Thibaut*, 39 N.C.App. 77, 250 S.E.2d 279, 293–94 (1978)). A specific example of such a situation is where an action attempts "to interfere with internal management where there is no allegation of fraud or bad faith." *Id.*

In the case at bar, along with other assorted claims, Appellant challenged the process by which SLKC's shareholders ratified the decisions of its management. The trial court limited SLKC's participation to issues related to that issue, allowing the company to defend its internal management process. The trial court limited SLKC's counsel to addressing the specific issue of SLKC's corporate process, including the investigation conducted by Bob Sutherland, as well as the process of corporate ratification. The trial court did not allow SLKC's counsel to make any comments or remarks regarding the claims made against SLKC's corporate

*Gravel Co.*, 287 Mass. 185, 191 N.E. 363 (1934); *Meyers v. Smith*, 190 Minn. 157, 251 N.W. 20, 21 (1933) (striking the corporation's answer where defendants who controlled the corporation sought "to impose on the corporation the burden of fighting their battle"); *Slutzker v. Rieber*, 132 N.J. Eq. 412, 28 A.2d 528, 530 (N.J.Ch.1942) (granting motion to strike the corporation's answer that controverted the merits of the complaint's claims); *Solimine v. Hollander*, 129 N.J. Eq. 264, 19 A.2d 344, 345–46 (N.J.Ch.1941); *Chaplin v. Selznick*, 186 Misc. 66, 58 N.Y.S.2d 453, 455 (Sp. Term 1945) ("The corporation itself can take no position in a derivative stockholder's suit which is fundamentally antagonistic to the claim asserted on its behalf. That is the whole theory which is behind a derivative stockholders' action."); *Kirby v. Schenck*, 25 N.Y.S.2d 431, 432–33 (Sp. Term 1941) (allowing corporation to defend action where plaintiff sought to enjoin corporation from carrying out personal service contracts because "interests of the corporation [were] injuriously threatened" by plaintiff's suit); *Godley v. Crandall & Godley Co.*, 181 A.D. 75, 168 N.Y.S. 251 (N.Y.App.Div.1917); *Swenson v. Thibaut*, 39 N.C.App. 77, 250 S.E.2d 279, 294 (N.C.1978); *Nat'l Bankers Life Ins. Co. v. Adler*, 324 S.W.2d 35, 37 (Tex.Civ.App.1959) ("If the derivative action threatens rather than advances the corporate interests, the corporation may actually defend the action."); *Corey v. Indep. Ice Co.*, 226 Mass. 391, 115 N.E. 488 (1917) (holding that corporation was allowed to defend suit challenging corporate reorganization); *Apfel v. Auditore*, 223 A.D. 457, 228 N.Y.S. 489 (N.Y.App.Div.1928) ("We regard it as inequitable that the corporations should be called upon to pay for the defense of this action brought for their benefit and resulting in a judgment in favor of the plaintiff as a representative of the corporate interests."); cf. *Lewis v. Shaffer Stores Co.*, 218 F.Supp. 238 (S.D.N.Y.1963) (striking corporation's answer where it was represented by same counsel representing the defendant directors and officers of the corporation); *Weiland v. N.W. Distilleries, Inc.*, 203 Minn. 600, 281 N.W. 364 (1938) (finding that corporation could defend suit where plaintiff's suit sought the corporation to cancel and void 375 shares of stock); *McHarg v. Commonwealth Fin. Corp.*, 44 S.D. 144, 182 N.W. 705 (1921) (finding that corporation could challenge venue where plaintiff sought the appointment of a receivership).

management. By crafting its ruling in this manner, the trial court allowed SLKC to defend its management process while requiring the company to remain neutral in all other respects.

 "Issues concerning the manner of witness examination and the conduct of counsel during trial are clearly within the trial court's discretion." *City of Kansas City v. Habelitz,* 857 S.W.2d 299, 301 (Mo. App. W.D.1993) (*citing Golian v. Stanley,* 334 S.W.2d 88, 92 (Mo. banc 1960)). Further, "trial courts are allowed wide discretion in ruling on the propriety and prejudicial effect of the conduct, comments, and arguments of counsel, and their rulings thereon will not be disturbed absent an abuse of such discretion." *Choate v. Natvig,* 952 S.W.2d 730, 735 (Mo.App. S.D. 1997). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable people can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Richardson v. State Highway & Transp. Comm'n,* 863 S.W.2d 876, 881 (Mo. banc 1993). In this case, the trial court carefully considered the parties' arguments, weighed the interests of the parties and any possible prejudice, and elected to allow SLKC to participate in a defined, limited fashion. The trial court did not abuse its discretion in doing so. Point denied.

The judgment is affirmed.

All concur.